# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CRYSTAL McGEE, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:11CV00035 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA HIGH SCHOOL** | ) | By: James P. Jones |
| **LEAGUE, INC.,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Hugh F. O'Donnell, Client Centered Legal Services of Southwest Virginia, Norton, Virginia, and Michael A. Bragg, Bragg Law, PLC, Abingdon, Virginia, for Plaintiffs; R. Craig Wood and Aaron J. Longo, McGuire Woods LLP, Charlottesville, Virginia and Charlotte, North Carolina, for Defendant.*

The plaintiffs, parents of public high school students whose school was closed under a school consolidation plan, seek a preliminary injunction allowing their children eligibility to participate in sports and other interscholastic competitions after their transfer to a new school in a different school district. Despite my sympathy for the children's situation, the plaintiffs have not demonstrated a likelihood of success on the merits of their lawsuit and thus I am unable to grant them relief.

I

The Town of St. Paul, Virginia, straddles the border between Wise and Russell Counties. Until recently, St. Paul High School, part of Wise County's public school system, traditionally served students residing in both counties within the Town. However, in March 2011, the Wise County School Board voted to consolidate its six high schools into three, resulting in the end of the St. Paul Fighting Deacons.

Under the School Board's consolidation plan, all students who formerly attended St. Paul High School were reassigned to Coeburn High School, located in Wise County. Students residing in the Russell County portion of the Town were granted the additional option, by virtue of their residency, of attending the nearest Russell County alternative, Castlewood High School. However, Virginia law does not mandate that students attend the resident school assigned to them by their local school board. Thus, because Castlewood High School indicated its willingness to accept St. Paul High School's former students, regardless of residency, all the students retained the ability to choose between Coeburn and Castlewood High Schools. At the hearing on the present motion, the court heard evidence that for various reasons — including distance, facilities, and the opportunity for and quality of the extracurricular activities — the vast majority of St. Paul High School's

former students have opted to attend Castlewood High School for the upcoming school year.

Defendant Virginia High School League, Inc. ("VHSL") is a non-profit organization composed of Virginia public high schools, charged with organizing and conducting the schools' interscholastic competitive events, including athletics. As part of its duties, VHSL establishes eligibility requirements for student participation. According to the VHSL Handbook, its eligibility rules are intended to "provide a uniform code" in order to "equalize to some degree the opportunities for success in competition, to encourage the participation of representative students[,] and to insure [sic] maintenance of minimum essential standards by all school representatives." (Def.'s Mot. in Opp'n, Ex. A, hereinafter, "VHSL Handbook".) VHSL's procedures provide a method for appealing eligibility determinations, available to any student or parent who disagrees with a VHSL decision. (Pl.'s Compl., Ex. A, hereinafter "Criteria for Transfer Appeals".) The appeals procedure involves multiple levels of internal review, culminating in the opportunity to demand a hearing before an independent hearing officer. (*Id.*)

Pertinent to the present dispute are VHSL's eligibility policies regarding transfer students (the "Transfer Rule"). VHSL's Transfer Rule applies whenever a student enrolled in one school transfers to another without a corresponding change

in the residence of his parents or guardian. (VHSL Handbook, Rule 28-6-1.) If a student transfers to another high school and does not fall under one of the Transfer Rule's exceptions, the student is ineligible from participating in VHSL-sponsored interscholastic competitions for one calendar year. (VHSL Handbook, Rule 28-6-2.) The stated purpose of the Transfer Rule is "to discourage recruiting and transfers for athletic/activity reasons and to encourage students to live with their parents and be enrolled in school continuously in their home districts." (Criteria for Transfer Appeals.) The Transfer Rule addresses the case of a school closure by providing an exception if the student transfers to the school serving the district in which his parents reside. (VHSL Handbook, Rule 28-6-2(2).)

Shortly after the announcement of Wise County's school reassignments, the Mayor of St. Paul contacted VHSL seeking an exception to the Transfer Rule. The Mayor requested that the Wise County St. Paul High School students be granted an eligibility exception should they choose to transfer to Castlewood High School. After review, VHSL's Executive Committee denied the request. The VHSL's ruling thus set the student body's eligibility as follows: if a student lived in the Russell County portion of the Town prior to the closure, he or she would be immediately eligible to participate in interscholastic activities at either Coeburn

High School or Castlewood High School; if a student lived in the Wise County portion of the Town, he or she would be eligible only at Coeburn High School.

Although several of the plaintiffs made initial inquiries to VHSL regarding their children's individual transfer status, they substantially relied on the Executive Committee's response to the Mayor's letter, and they did not appeal using VHSL's administrative remedies. Instead, they filed the present lawsuit on July 19, 2011, seeking a permanent injunction against the VHSL preventing the application of the Transfer Rule to their children. They also asked for a preliminary injunction to allow their children temporary eligibility at Castlewood High School while this lawsuit is pending. The court held a hearing on this Motion for a Preliminary Injunction on August 5, 2011, at which evidence was received. At the conclusion of the hearing, the motion was taken under advisement. For the reasons that follow, a preliminary injunction will be denied.

II

The plaintiffs argue that VHSL's Transfer Rule violates their children's substantive and procedural due process and equal protection rights, as well as the Virginia Constitution. They stress that they challenge the rule only as applied to their unique circumstances, and they do not contest its facial validity.

- 5 -

Preliminary injunctions are "extraordinary remedies" that may be granted "only sparingly and in limited circumstances." *Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks and citation omitted). A party seeking preliminary injunctive relief must clearly demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371 (2010), *reissued on remand*, 607 F.3d 355 (4th Cir. 2010) (adopting the *Winter* standard in the Fourth Circuit).

*Winter's* stringent standard prevents me from issuing a preliminary injunction in this case. Having carefully considered the applicable law, I find that the plaintiffs have failed to demonstrate a likelihood of success on the merits, as well as irreparable harm.

In order to claim Fourteenth Amendment protection, the plaintiffs must first establish that they have been deprived of life, liberty, or property. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

The plaintiffs' Fourteenth Amendment claims are grounded in the argument that the Transfer Rule deprives them of the "parental right to raise one's child and to make decisions about the child's welfare." (Compl. 2.) Although it is well-established that the Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children, *Troxel v. Granville*, 530 U.S. 57, 66 (2000), it is equally apparent that the right is neither absolute nor unqualified. *Lehr v. Robertson*, 463 U.S. 248, 256 (1983).

Indeed, as the case law makes clear, the right to parent is not implicated here. As the plaintiffs concede, the Transfer Rule does not eliminate the parents' freedom of choice regarding where they send their children to school.[1] The rule instead affects only one metric of consideration in exercising that choice. Although couched in terms of the fundamental right to parent, the real "right" the plaintiffs attempt to assert is the right of their children to participate in extracurricular activities with the school of their choice. Components of the educational process, such as interscholastic competition, are issues of public education that do not merit constitutional protection. *Sisson v. Va. High Sch. League, Inc.*, No. 7:10CV00530, 2010 WL 5173264, at *4 (W.D. Va. Dec. 14,

---

[1] Likewise, the Transfer Rule does not impinge upon plaintiffs' alleged First Amendment ability to "vote with their feet" by transferring schools.

2010). "[P]arents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998). "While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child." *Blau v. Fort Thomas Public Sch. Dist.,* 401 F.3d 381, 395-96 (6th Cir. 2004)

The plaintiffs presented testimony that the Transfer Rule's effects have weighed heavily on their families. One plaintiff plans to send her son to Coeburn High School, against her wishes, in order to maintain his athletic eligibility. Another plaintiff has apparently gone so far as to move the family into a rental home so that his son can play as a Castlewood Blue Devil. However, while I appreciate the importance athletics play in their decision making, I also recognize that the plaintiffs retain the choice between Castlewood High School and Coeburn High School. As with many choices, this is one with consequences, and the plaintiffs have the full opportunity to consider those consequences in deciding which option is best for their families. *See Jesuit Coll. Preparatory Sch. v. Judy*, 231 F. Supp. 2d 520, 531 (N.D. Tex. 2002), *vacated as moot*, No. 02-10174, 2003 WL 23323003, at *1 (5th Cir. Feb. 26, 2003) (unpublished). However personally

significant the individuals' complaints, they are not thereby elevated to those of constitutional import. Because the courts have rejected the notion that students have a constitutionally protected interest in participating in interscholastic athletics, *see Sisson,* 2010 WL 5173264 at *3, I conclude that the plaintiffs' substantive due process claim has very little likelihood of success on the merits.

The plaintiffs also claim a violation of the Equal Protection Clause. They contend that the Transfer Rule's application results in the Wise County students being treated less favorably than those students who happen to live in Russell County. Under recognized equal protection analysis, because no suspect class or fundamental due process right is implicated here, the sole question is whether the VHSL Transfer Rule bears a rational relationship to a legitimate state interest. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

The VHSL handbook states that the purpose of the Transfer Rule is to discourage athletic and academic recruiting and to encourage students to attend school in their parents' resident district. The handbook also emphasizes the desire to establish rules that can be applied fairly and uniformly. Transfer rules articulating comparable goals have been upheld under rational basis scrutiny time and again. *See, e.g., Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152, 160-61 (5th Cir. 1980). Given the consistency of the case law and the deferential nature of

rational basis review, I find that the plaintiffs' have not demonstrated a likelihood of success on their equal protection claim.

The plaintiffs' additionally contest the sufficiency of VHSL's appeals procedures in providing them with adequate procedural due process. Specifically, the plaintiffs argue that the VHSL's procedures lack an impartial decisionmaker, use vague and inconsistent criteria, lack a definite method to apply the "undue hardship" standard for eligibility exceptions, require an overly burdensome deposit to avail an independent hearing officer, and unfairly require the student to enroll in his new school prior to appeal.

Procedural due process protects a person from government action which deprives him of an important liberty without adequate notice and opportunity to be heard. *Perry v. Sindermann*, 408 U.S. 593, 599 (1972); *Bd. of Regents v. Roth*, 408 U.S. at 569-70. Given the non-constitutional nature of the right at issue and the extensive, multilayer level of the VHSL's appeals procedure, I am doubtful that the plaintiffs could show that they have been deprived of adequate due process. *See In re United States ex rel. Mo. State High Sch. Activities Ass'n*, 682 F.2d 147, 153 (8th Cir. 1982) (upholding a similar appeals procedure against a due process challenge).

Finally, the plaintiffs' allege that the school system's delegation of authority to VHSL violates the Virginia Constitution. Article VIII, Section 7 of the Virginia Constitution places exclusive responsibility for the supervision of local school systems on local school boards. Although no school board has or could force parents to send their child to his or her resident public school, the plaintiffs contend that the Transfer Rule has the de facto effect of allowing VHSL to do so.

Again, the fact that there are obvious consequences to the choice of school does not implicate a constitutional issue. Moreover, VHSL is a voluntary association, and such associations are traditionally granted significant deference as to their internal affairs, rules, and bylaws unless enforcement would be arbitrary, capricious, or an abuse of discretion. *See Hebert v. Ventetuolo*, 480 A.2d 403, 407 (R.I. 1984) (noting the application of this principle to several statewide athletic associations).

For these reasons, I find that the plaintiffs have not demonstrated a likelihood of success on the merits. Apart from this deficiency, the plaintiffs have also failed to show irreparable harm. Courts have routinely rejected the notion that a student suffers irreparable harm by not being permitted to participate in interscholastic athletics. *Sisson*, 2010 WL 5173264, at *4.

The court heard testimony and argument underscoring the significant benefits interscholastic competition contributes to a child's educational development. This court fully supports those values. No doubt the perseverance and commitment demonstrated by the parents in this case is not lost on their children. However, lessons of victory and defeat, of fairness and unfairness, and of overcoming setbacks, so often taught in the sports arena, are also present in difficult life circumstances like this one. I hope that, despite the disappointing legal outcome, the plaintiffs' children remember that "clear eyes, full hearts, can't lose."[2]

III

For the foregoing reasons, it is **ORDERED** that the Motion for a Preliminary Injunction (ECF No. 16) is DENIED.

ENTER: August 11, 2011

/s/ JAMES P. JONES
United States District Judge

---

[2] This inspirational quote, lifted from Coach Eric Taylor's halftime speeches to the Dillon Panthers in the television show "Friday Night Lights," reminds us all that it is often one's spirit, rather than the scoreboard, that defines a true winner.